CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICAH SMITH
Deputy Chief, Criminal Division

MARGARET C. NAMMAR #9045
CRAIG S. NOLAN
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Emails:       Margaret.Nammar@usdoj.gov
                   Craig.Nolan@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>COURTNEY GENE JETER,<br><br>    Defendant. | ) CR. NO. 21-00126-01 JMS<br>)<br>) MEMORANDUM OF PLEA<br>) AGREEMENT<br>)<br>)<br>) DATE:  March 30, 2023<br>) TIME:  1:30 P.M.<br>) JUDGE: J. Michael Seabright<br>)<br>) |

## <u>MEMORANDUM OF PLEA AGREEMENT</u>

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, COURTNEY GENE JETER, and his attorney, Gary G. Singh, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in the Indictment with violating Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846 and Title 18, United States Code, Sections 922(g)(1), 924(a)(2), 924(c)(1)(A)(i), and 1956(a)(1)(B)(i).

2.     The defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crimes with which he has been charged.

## THE AGREEMENT

4.     The defendant will enter a voluntary plea of guilty to Counts 1, 8, and 10 of the Indictment, which charge him with conspiring to distribute and possess with intent to distribute controlled substances, namely: (1) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); (2) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

propanamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); (3) 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); and (4) 500 grams or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846 (Count 1); knowingly possessing a firearm in furtherance of a drug trafficking crime, that is, the drug trafficking crime charged in Count 1, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count 8); and money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count 10). In return, the government agrees to move to dismiss Counts 2, 3, 4, 5, and 9 of the Indictment as to the defendant after sentencing; the government agrees not to file a special information pursuant to 21 U.S.C. § 851 in this matter, which may otherwise result in enhanced sentencing based on defendant's prior drug convictions; and the government agrees to be bound by the stipulations set forth in paragraph 10 of this plea agreement. The defendant understands, however, that all relevant conduct

will be considered pursuant to Section 1B1.3 of the Sentencing Guidelines in connection with the counts to which the defendant is pleading guilty.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters this plea because he is in fact guilty of conspiring to distribute and possess with intent to distribute controlled substances, and the conspiracy involved: (1) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); (2) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); (3) 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); and (4) 500 grams or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United

States Code, Section 846 (Count 1); knowingly possessing a firearm in furtherance

of a drug trafficking crime, that is, the drug trafficking crime charged in Count 1,

in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count 8); and

money laundering, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i) (Count 10), as charged in Counts 1, 8, and 10 of the Indictment,

and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.    The defendant understands that the penalties for the offenses to which

he is pleading guilty include:

a.    As to Count 1, a term of imprisonment of not less than 10 years

and not more than life and a fine of up to $10,000,000, plus a term of supervised

release of not less than 5 years and up to life.

b.    As to Count 8, a term of imprisonment of not less than 5 years

and up to life, which must be served consecutively to any other sentence imposed

on the defendant, and a fine of up to $250,000, plus a term of supervised release up

to 5 years.

c.    As to Count 10, a term of imprisonment of not more than 20

years and a fine of up to $500,000 or twice the value of the property involved in

the transaction, whichever is greater, plus a term of supervised release up to 3 years.

        d.     In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty. The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

        e.     **Forfeiture.** Pursuant to 21 U.S.C. § 853, forfeiture of any (1) property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. Pursuant to 18 U.S.C. § 924(d), forfeiture of any firearms or ammunition subject to forfeiture pursuant to 18 U.S.C. § 924(d). Pursuant to 18 U.S.C. § 982(a)(1), forfeiture of any property, real or personal, involved in an offense in violation of 18 U.S.C. § 1956, and property traceable to such property.

f.  **Loss of Federal Benefits.**   At the discretion of the Court, the defendant may also be denied any or all federal benefits, as that term is defined in Title 21, United States Code, Section 862, (a) for up to five years if this is the defendant's first conviction of a federal or state offense amounting to the distribution of controlled substances, or (b) for up to ten years if this is the defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances.   If this is the defendant's third or more conviction of a federal or state offense amounting to the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in Title 21, United States Code, Section 862(d).

## FACTUAL STIPULATIONS

8.     The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which the defendant is pleading guilty:

a.     By at least January 2018, and continuing to on or about September 30, 2021, within the District of Hawaii and elsewhere, there was an agreement between the defendant, Courtney Gene Jeter (hereinafter "Jeter" or "the defendant"), and others known and unknown, including but not limited to Janet

Pauline Nelson and David Abraham Monalim, to possess and distribute controlled substances.

b.      Jeter was the organizer/leader of the Hawaii based drug trafficking organization.   Jeter had an agreement with individuals known and unknown located in Mexico to supply him with large quantities of controlled substances, including methamphetamine, cocaine, heroin, and knockoff Oxycodone M-30 pills for further distribution in Hawaii.   During the period of the conspiracy, Jeter was supplied with approximately 50 pounds of ICE every six months and he paid $4,000 per pound.   He was also supplied with cocaine, heroin, and knockoff Oxycodone M-30 pills on an as needed basis.   In approximately May 2021, Jeter received a shipment containing 30,000 knockoff Oxycodone pills laced with fentanyl.   After the controlled substances were transported from Mexico into California, Jeter arranged for them to be shipped from California to Hawaii via FedEx or other mail carriers.   Once the controlled substances arrived in Hawaii, Jeter stored them at a residence located on Uahanai Place in Kapolei, Hawaii, hereinafter referred to as the "stash house."   Jeter would then distribute the controlled substances to his sub-distributors, including but not limited to Nelson and Monalim.   After distributing the controlled substances, Nelson,

Monalim, and others then provided Jeter with proceeds from the sale of the controlled substances.

        c.    Specifically, Jeter had agreements with Nelson, Monalim, and others that he would "front" (provide on consignment) them controlled substances, including methamphetamine, cocaine, and knockoff Oxycodone M-30 pills for them to further distribute to others in Hawaii.   In furtherance of those agreements, Nelson, Monalim, and others distributed the controlled substances and provided Jeter with cash they received from the sale of the controlled substances, keeping any profit for themselves.

        d.    Beginning in at least January 2021, and continuing until about September 2021, Jeter fronted Nelson approximately two to three pounds of methamphetamine every two weeks.   Nelson in turn distributed the methamphetamine to others in Hawaii and then paid Jeter the proceeds from the sale of the methamphetamine.   During this time period and in furtherance of the conspiracy, Jeter distributed at least 27 pounds of methamphetamine to Nelson for further distribution in Hawaii.   Jeter also fronted Nelson other controlled substances for distribution, including cocaine.

        e.    When Nelson needed more controlled substances or to provide Jeter with proceeds, Nelson and Jeter would text message or call each other and

arrange to "meet up for drinks." "Drinks" was code for drugs or drug proceeds. For example, on September 14, 2021, Jeter sent Nelson a text message and asked if she wanted to have "drinks" this Friday. Nelson responded in a text message and asked if they were meeting at Hibiscus again. On September 17, 2021, Nelson met with Jeter and his wife at the Hibiscus Club located on Ward Avenue in Honolulu, Hawaii and Nelson provided Jeter with proceeds from the sale of controlled substances.

f. Beginning by at least January 2021, and continuing until about September 2021, at least two to three times a month, Jeter and Monalim met in person at which time Jeter fronted Monalim controlled substances, including methamphetamine, knockoff Oxycodone M-30 pills containing fentanyl, and cocaine. Monalim in turn distributed the controlled substances to others in Hawaii and then paid Jeter cash proceeds from the sale of the controlled substances. During this time period and in furtherance of the conspiracy, Jeter distributed at least 45 pounds of methamphetamine to Monalim for further distribution in Hawaii.

g. When Monalim needed more controlled substances or to provide Jeter with proceeds, Monalim and Jeter would text message or call each other and arrange to meet up. Jeter and Monalim used coded language in these

conversations.   They often discussed meeting up for "drinks."   "Drinks" was code for drugs or drug proceeds.   For example, on July 20, 2021, Monalim called Jeter on his cellular phone.   During the conversation, Jeter asked Monalim if he wanted to "turn up a few and pelt some brews."   Monalim agreed to meet up with Jeter the next day.   On July 21, 2021, law enforcement electronic surveillance showed Jeter entering the stash house and then leaving the stash house carrying a bag with a Nike logo.   Jeter was then seen by law enforcement driving to the Kapolei shopping center where he met with Monalim and gave Monalim the same bag with the Nike logo.   This bag contained controlled substances, which Jeter provided to Monalim for further distribution to others in Hawaii.

       h.     During the period of the conspiracy and in furtherance of his drug trafficking, Jeter knowingly and intentionally possessed a Taurus, .38 caliber revolver bearing serial number QF84836, a Ruger, 9MM caliber pistol bearing serial number 313-71342, and 424 rounds of assorted ammunition to include: 403 rounds of 9mm ammunition, 17 rounds of .38 caliber ammunition, 2 rounds of .25 caliber ammunition, and 2 rounds of .22 caliber ammunition.   The firearms and ammunition were owned by Jeter and stored by Jeter at the stash house in a safe along with controlled substances.   Jeter possessed these firearms and ammunition in furtherance of the charged drug trafficking conspiracy, including for protection

against assault, and protection against robbery and theft of his controlled substances and proceeds.

i.     On or about September 29, 2021, a federal search warrant was executed at the stash house.   The search resulted in the seizure of the above listed firearms and ammunition, as well as the following: 15.52 kilograms (net weight) of pure Methamphetamine Hydrochloride; 1,203 grams (net weight) of Cocaine; 2,922.8 grams (net weight) of Fentanyl (approximately 26,561 pills); 959 grams (net weight) of Heroin; and a scale and other drug paraphernalia.   All of the above belonged to Jeter and he knew that the knockoff Oxycodone pills contained Fentanyl.   The controlled substances were sent to the Drug Enforcement Administration laboratory for testing and analysis.   Lab results confirmed the above net weights and substances.

j.     During the period of the conspiracy, Jeter owned and operated a pawn shop in Hawaii, namely, Gold Hawaii Pawn.   Jeter laundered his drug proceeds through his business, including but not limited to a $50,000 sham business transaction in or about August 2021, in which he exchanged $50,000 in United States currency for business checks from a precious metals and jewelry store in Honolulu, Hawaii, and then deposited the checks into his various bank accounts.   Jeter conducted these financial transactions to conceal and disguise the

nature, source, ownership, and control of the proceeds, which he knew were from his illegal drug trafficking.

k.     Jeter admits that the approximately $408,919.00 in United States currency seized by the government from his residence and safe deposit boxes and the approximately $261,292.38 seized from his personal and business bank accounts are proceeds of the charged drug trafficking conspiracy.

l.     In furtherance of the charged drug trafficking conspiracy, Jeter distributed to a confidential informant working for the Drug Enforcement Administration (DEA) 50 grams or more of methamphetamine on each of December 17, 2020, January 28, 2021, March 5, 2021, and August 12, 2021.   In exchange for the methamphetamine received during these four controlled purchases of methamphetamine from Jeter, the DEA paid Jeter via the confidential informant $39,000.00 in United States currency, which Jeter admits are proceeds of the charged drug trafficking conspiracy.

9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

# SENTENCING STIPULATIONS

10.    Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6Bl.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.    The applicable guideline is U.S.S.G. § 2D1.1.

b.    Pursuant to U.S.S.G. § 2D1.1, Commentary Application Note 8, the quantity of the combined substances involved in the offense for which the defendant agrees he is directly responsible for and to which he agrees to plead guilty is the equivalent of 90,000 KG or more of marijuana.   This results in a Base Offense Level of 38.   U.S.S.G. § 2D1.1.

c.    A 2-level increase applies because the defendant maintained a premises for the purpose of distributing controlled substances.   U.S.S.G. § 2D1.1(b)(12).

d.    The defendant was an organizer and leader of a criminal activity that involved five or more participants or was otherwise extensive, thus resulting in a 4-level increase in the defendant's offense level.   *See* U.S.S.G. § 3B1.1(a).

e.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

f.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either

the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.     The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this

Agreement. The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a. The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

# FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial

obligations, including forfeiture as set forth below, that may be imposed upon him,

the defendant agrees as follows:

a.      The defendant agrees to fully disclose all assets in which he has

any interest or over which he exercises control, directly or indirectly, including any

assets held by a spouse, nominee, or third party.   The defendant understands that

the United States Probation Office (USPO) will conduct a presentence

investigation that will require the defendant to complete a comprehensive financial

statement.   To avoid the requirement of the defendant completing financial

statements for both the USPO and the government, the defendant agrees to

truthfully complete a financial statement provided to the defendant by the United

States Attorney's Office.   The defendant agrees to complete the disclosure

statement and provide it to the USPO within the time frame required by the United

States Probation officer assigned to the defendant's case.   The defendant

understands that the USPO will in turn provide a copy of the completed financial

statement to the United States Attorney's Office.   The defendant agrees to provide

written updates to both the USPO and the United States Attorney's Office

regarding any material changes in circumstances, which occur prior to sentencing,

within seven days of the event giving rise to the changed circumstances. The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b. The defendant expressly authorizes the United States Attorney's Office to obtain his credit report. The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing. The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c. Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

# FORFEITURE

15.     As part of his acceptance of responsibility and pursuant to 21 U.S.C.
§ 853, 18 U.S.C. § 924(d), and 18 U.S.C. § 982(a)(1), the defendant agrees as
follows:

a.     (1) The defendant consents to the entry of a forfeiture money
judgment in the amount of $39,000.00 in United States currency (the "Forfeiture
Money Judgment") and (2) the defendant will forfeit all of his right, title, and
interest in the following property (the "Specific Property"):

i.     Approximately $42,030.00 in United States currency
seized from the defendant, COURTNEY GENE JETER's residence pursuant to a
search warrant on or about September 30, 2021;

ii.     Approximately $357,900.00 in United States currency
seized from three safe deposit boxes registered to the defendant, COURTNEY
GENE JETER, pursuant to his consent, on or about September 30, 2021;

iii.     Approximately $8,989.00 in United States currency
seized from Hawaii Gold Pawn pursuant to a warrant, on or about September 30,
2021;

iv.    Approximately $162,438.04 in United States currency seized from Central Pacific Bank Account No. XXXXXX2047 pursuant to warrant on or about October 6, 2021;

v.    Approximately $70,000.00 in United States currency seized from Central Pacific Bank Account No. XXXXXX2047 pursuant to warrant on or about October 6, 2021;

vi.    Approximately $25,000.00 in United States currency seized from Central Pacific Bank Account No. XXXXXX2021 pursuant to warrant on or about October 6, 2021;

vii.    Approximately $3,746.87 in United States currency seized from Central Pacific Bank Account No. XXXXXX0252 pursuant to warrant on or about October 6, 2021;

viii.    Approximately $107.47 in United States currency seized from Central Pacific Bank Account No. XXXXXX7030 pursuant to warrant on or about October 6, 2021;

ix.    A Taurus, .38 caliber revolver bearing serial number QF84836, a Ruger, 9MM caliber pistol bearing serial number 313-71342, and 424 rounds of assorted ammunition to include: 403 rounds of 9mm ammunition, 17 rounds of .38 caliber ammunition, 2 rounds of .25 caliber ammunition, and 2

rounds of .22 caliber ammunition, seized from a residence located on Uahanai

Place, Kapolei, Hawaii 96707 on or about September 30, 2021; and

        x.    A 2014 gray Cadillac Sedan bearing Hawaii license

WBX091, VIN 1G6AP5SX5E0121846.

        b.    The defendant acknowledges that the Forfeiture Money

Judgment and the Specific Property are subject to forfeiture pursuant to 21 U.S.C.

§ 853 as property constituting, or derived from, proceeds the person obtained,

directly or indirectly, as the result of a violation of the provisions of 21 U.S.C.

§§ 801 et seq. or 21 U.S.C. §§ 951 et seq., and property used, or intended to be

used, in any manner or part, to commit, or to facilitate the commission of, such

violation; and pursuant to 18 U.S.C. § 982(a)(1), as property, real or personal,

involved in an offense in violation of 18 U.S.C. § 1956, and property traceable to

such property.   The defendant acknowledges that the above-described firearms

and ammunition are subject to forfeiture also pursuant to 18 U.S.C. § 924(d) as

firearms or ammunition subject to forfeiture pursuant to 18 U.S.C. § 924(d).

        c.    The defendant knowingly and voluntarily waives and agrees to

waive any and all constitutional, statutory, and other challenges to the forfeiture on

any and all grounds, including that the forfeiture constitutes an excessive fine or

punishment under the Eighth Amendment.   The defendant waives all

constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment. The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

d.     The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property. The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the preliminary order of forfeiture for the Specific Property and the Forfeiture Money Judgment becoming final as to the defendant when entered.

e.     The defendant agrees to waive all interest in the Specific Property in any administrative or judicial forfeiture proceeding, whether criminal

or civil, state or federal, and to withdraw any claim that the defendant may have filed in such a proceeding.   The defendant further waives any other notice requirement that may apply to the administrative and/or civil forfeiture of the Specific Property.

f.      The defendant understands that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

g.      The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount, $39,000, represents property subject to forfeiture that, as a result of any act or omission of the defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

h.     Payment of the Forfeiture Money Judgment shall be made by postal money order, bank check, or certified check payable to the United States Marshals Service.   On or before the date he enters his plea of guilty pursuant to this agreement, the defendant shall cause said check to be hand-delivered to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

i.     If the Forfeiture Money Judgment is not paid on or before the date the defendant enters his plea of guilty pursuant to this agreement, interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof at the judgment rate of interest from that date. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before the date of his guilty plea, the defendant consents to the forfeiture of any other property alleged to be subject to forfeiture in the Indictment, including substitute assets, in full or partial satisfaction of the money judgment, and remains responsible for the payment of any deficiency until the Forfeiture Money Judgment, including any accrued interest, is paid in full.

## IMPOSITION OF SENTENCE

16.     The defendant understands that the District Court in imposing

sentence will consider the provisions of the Sentencing Guidelines.   The defendant

agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or

predictions from any source.

17.     The defendant understands that this Agreement will not be accepted or

rejected by the Court until there has been an opportunity by the Court to consider a

presentence report, unless the Court decides that a presentence report is

unnecessary.   The defendant understands that the Court will not accept an

agreement unless the Court determines that the remaining charges adequately

reflect the seriousness of the actual offense behavior and accepting the Agreement

will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.     The defendant understands that by pleading guilty he surrenders

certain rights, including the following:

a.      If the defendant persisted in a plea of not guilty to the charges

against him, then he would have the right to a public and speedy trial.   The trial

could be either a jury trial or a trial by a judge sitting without a jury.   The

defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant

27

would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.    At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

f.    At a trial, the defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the Indictment necessary to establish the statutory mandatory minimum penalty or an increased statutory maximum penalty.

19.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later

28

proceeds to trial. The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn. The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21. The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

22. The defendant agrees that he will fully cooperate with the United States.

a. The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings

involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.       The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.       The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.       The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.       Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline

range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

23.     In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24.     Pursuant to Guidelines § 5Kl.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for Counts 1 and 8 on the ground that the defendant has provided substantial assistance in the investigation or

prosecution of another person who has committed an offense.   The defendant understands that:

        a.      The decision as to whether to make such a request or motion is entirely up to the prosecution.

        b.      This Agreement does not require the prosecution to make such a request or motion.

        c.      This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

        d.      Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

25.     The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26. To become effective, this Agreement must be signed by all signatories listed below.

27. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii


MICAH SMITH                                    Dated: 3/22/2023
Deputy Chief, Criminal Division


MARGARET C. NAMMAR                             Dated: 3/20/2023
CRAIG S. NOLAN
Assistant U.S. Attorneys


COURTNEY GENE JETER                            Dated: 3/19/23
Defendant


GARY G. SINGH                                  Dated: March 19, 2023
Attorney for Defendant